UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

NESRET GASHI,

                    Petitioner,                    Case No. 1:13-cv-558

v.                                                 Honorable Robert J. Jonker

MARY BERGHUIS,

                    Respondent.
_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner pleaded *nolo contendere* in Kent County Circuit Court to one count of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws § 750.520b(1)(d).  On December 8, 2010, the trial court sentenced Petitioner to a prison term of 10 to 40 years.

        Petitioner, who is represented by counsel in this action, raises the following grounds for habeas corpus relief:

    I.        PETITIONER . . . WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW UNDER THE CONSTITUTION BECAUSE HIS NO CONTEST PLEA WAS NOT VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY MADE WHEN HIS ATTORNEY, (A) FAILED TO ADEQUATELY INFORM HIM OF THE DEPORTATION IMPLICATIONS OF HIS PLEA, (B) FAILED TO REQUEST AN INTERPRETER, (C) GAVE GROSSLY INACCURATE INFORMATION REGARDING THE SENTENCING TERM, (D) FAILED TO PROPERLY INVESTIGATE THE CASE REGARDING EXCULPATORY EVIDENCE RELATED TO THE COMPLAINANT, AND (E) FAILED TO SEEK A SEVERANCE FROM THE CODEFENDANT WHEN PETITIONER HAD ALWAYS ASSERTED HIS INNOCENCE AND DESIRE TO GO TO TRIAL.

II.    PETITIONER . . . IS ENTITLED TO AN EVIDENTIARY
       HEARING.

(Pet., docket #1, Page ID#6.)  Respondent has filed an answer to the petition (ECF No. 10) stating

that the grounds should be denied because his claims are without merit.  Petitioner filed a reply (ECF

No. 38.)  Upon review and applying the AEDPA standards, the Court finds that the petition should

be denied for failure to raise a meritorious federal claim.

### Factual Allegations & Procedural History

Petitioner Nesret Gashi, and his brother, Imer Gashi, were accused of sexually

assaulting nineteen-year-old Hope VanDyke in February of 2010.  Both brothers were charged with

six counts of CSC I, MICH. COMP. LAWS § 750.520b(1)(d), involving three counts of oral penetration

and three counts of vaginal penetration.

After the preliminary examination, the prosecution successfully sought to introduce

a prior incident from 2008, when Petitioner, his brother and a third man were accused of sexually

assaulting Melanie Chelette.

At a plea hearing held on November 1, 2010, Petitioner and his brother pleaded *nolo

contendere* to one count of CSC I.  The prosecutor explained that in exchange for the plea, the

remaining charges would be dismissed and the defendants would receive minimum prison sentences

between 51 and 135 months.  (Plea Tr. 4-5, ECF No. 17.)  The prosecution also agreed not to bring

any charges regarding the incident involving Melanie Chelette.  (*Id*.)  The trial court advised

Petitioner of the charges against him and that he faced a maximum prison term of life in prison.  (*Id*.

at 6-7.)  Petitioner stated that he understood.  (*Id*. at 7.)  Petitioner confirmed that he read and signed

the Advice of Rights form, and that he understood the rights he was giving up by pleading no

-2-

contest.  (*Id*. at 8.)  Petitioner also stated that he understood that if his plea was accepted, he was giving up any claim that the plea was the result of undisclosed promises or threats or that it was not his own choice to enter the plea.  (*Id.*)  Petitioner agreed that the plea agreement had been correctly stated by the prosecutor and that no one had promised him anything other than what had been placed on the record.  (*Id*. at 9-10.)  Petitioner denied that the plea was the result of any threats and that it was his choice to plead no contest.  (*Id*. at 10.)  Referring to the preliminary examination testimony given by the complainant, the trial court found a factual basis for the plea.  (*Id*.)  Trial counsel and the prosecutor also confirmed that there were no promises, threats or inducements other than what was mentioned on the record.  (*Id*. at 11.)  The trial court accepted the plea, finding that it was "understanding, voluntary and accurate."  (*Id.*)

Before sentencing, the Supreme Court held in *Padilla v. Kentucky*, 559 U.S. 356 (2010), that the Sixth Amendment requires a defense attorneys to inform non-citizen clients of the deportation risks of guilty pleas.  In response to *Padilla*, Petitioner was brought before the trial court on November 10, 2010.  (*Padilla* Hr'g Tr. 4, ECF No. 18.)  The trial court explained that while the potential immigration consequences of the plea, i.e., deportation, had been discussed thoroughly in chambers with both counsel before the plea hearing, the court had neglected to put it on the record.  (*Id*. at 4.)  Counsel for both brothers confirmed that they had discussed the immigration ramifications with their clients in advance of the plea hearing.  (*Id*. at 6.)  The court then asked Petitioner if he understood the potential consequences of the plea and he responded in the affirmative.  (*Id*. at 7.)

On December 8, 2010, the trial court sentenced Petitioner to a prison term of 10 to 40 years.  (Sentencing Tr. 25, ECF No. 19.)  Before he was sentenced, Petitioner gave a lengthy statement to the court claiming that he was not a rapist.  (*Id*. at 15-19.)

Petitioner filed a motion for resentencing, claiming that the sentence imposed did not fairly place Petitioner within the negotiated 51-135 months agreed upon sentence guideline range, the sentencing court did not have a sufficient basis to conclude that there was a pattern of assaultive behavior, and the immigration consequences were incorrectly assessed by the sentencing court. The motion was denied by the trial court on January 28, 2011. Petitioner initially filed an application for leave to appeal in the Michigan Court of Appeals claiming that the trial court erroneously sentenced him to imprisonment of 10 to 40 years, but later withdrew his appeal when he retained new counsel. The Michigan Court of Appeals dismissed his application on June 14, 2011. (*See* Mich. Ct. App. Ord., ECF No. 23.)

On June 8, 2011, Petitioner's new counsel filed a motion in the trial court to withdraw the plea, for resentencing, and/or for a *Ginther*[1] hearing on his claims of ineffective assistance of counsel. In the alternative, Petitioner moved for re-sentencing without consideration of the alleged other bad acts evidence or to hold an evidentiary hearing on the reliability of the information relied upon at sentencing. Following a hearing on July 8, 2011, the trial court denied the motion. (Plea Withdrawal Mot. Hr'g, ECF No. 21.) In making its ruling, the trial court stated:

> Well, obviously, the Court is well familiar with this case. As I said a few minutes ago, everybody involved spent considerable time on this case last year. As I stated on the record previously, extensive involvement by the three attorneys here, very competent representation on all sides, a very difficult case, very serious allegations, very serious consequences, and what it came down to is each defendant decided to accept the certainty of a plea agreement rather than the uncertainty of trial on multiple counts of criminal sexual conduct, first degree. We had a proper and valid plea agreement here. The court rule was followed regarding plea procedures. It was a proper sentence within the – both the sentencing guidelines and the – the plea agreement. The Court saw absolutely no indication here that either defendant had a language barrier. As – as I stated before, Mr. Gashi was placed under oath. He did

---

[1] *People v. Ginther*, 212 N.W. 2d, 922 (Mich. 1973).

not claim any threats or promises other than what was included in the plea agreement. He agreed with the plea agreement. He pled no contest, meaning that he did not contest the allegations against him. There's absolutely no basis here to allow withdrawal of a plea. There's no miscarriage of justice here.

(*Id.* at 17-18.) Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals on December 8, 2011, raising four grounds for relief, including the claims now presented in his habeas petition. That court of appeals denied the application on February 6, 2012, for lack of merit in the grounds presented. (*See* Mich. Ct. App. Ord., ECF No. 26.) Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which was denied on June 25, 2012, because the court was not persuaded that the questions presented should be reviewed. (*See* Mich. Ord., ECF No. 27.)

## **Standard of Review**

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted). The court may grant relief under the "unreasonable application" clause "if the state court

correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other

explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

      Petitioner vehemently argues that his claims should be reviewed *de novo* because the trial court failed to specifically rule on Petitioner's claims of ineffective assistance of counsel and the orders of the Michigan appellate courts are "unexplained." Petitioner relies on the Sixth Circuit's opinion in *McClellan v. Rapelje*, 703 F.3d 344 (6th Cir. 2013), to support his contention that the Michigan appellate courts did not decide his claims on the merits. The *McClellan* opinion stated that the *Harrington* presumption may be overcome if an analysis of the procedural history and factual underpinnings of a petitioner's case indicates that there is a "reason to think some other explanation for the state court's decision is more likely." *McClellan*, 703 F.3d at 349.

      Petitioner's situation is distinguishable from *McClellan*. In *McClellan*, where the lower state appellate court had explicitly rejected the petitioner's claim on procedural grounds. Accordingly, the Sixth Circuit presumed that the later Michigan Supreme Court affirmation of the Michigan Court of Appeals decision rested on the same procedural grounds. While the trial court in this case did not individually address Petitioner's claims of ineffective assistance of counsel, it clearly denied Petitioner's motion to withdraw his plea on the merits. The Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented, and the Michigan Supreme Court similarly denied Petitioner's application because it was not persuaded that the questions presented should be reviewed by the court. There is no evidence that the Michigan appellate courts denied Petitioner's claims on procedural grounds, as it did in *McClellan*. Contrary to Petitioner's assertions, the lack of a specific ruling on his claims of ineffective assistance of counsel does not mean that the *Harrington* presumption has been overcome.

-8-

Rather, in the absence of information that some other explanation for the Supreme Court's decision is more likely, this Court must presume that the Michigan appellate courts denied Petitioner's ineffective assistance of counsel claims on the merits. *See Sadler v. Howes*, 541 F. App'x 682, 689 (6th Cir. 2013) (distinguishing *McClellen* in a case involving similar facts). Accordingly, the Court will apply AEDPA deference in reviewing Petitioner's claims.

## Discussion

### I.      **Validity of Guilty Plea**

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall

not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *See Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Here, the transcript of the plea hearing shows that, after conducting a thorough plea colloquy, the trial court found that the plea was knowing and voluntary.  The trial court advised Petitioner of the charges against him and that he faced a maximum prison term of life in prison. (Plea Tr. at 6-7.)  Petitioner stated that he understood.  (*Id*. at 7.)  Petitioner confirmed that he read and signed the Advice of Rights form, and that he understood the rights he was giving up by pleading no contest.  (*Id*. at 8.)  Petitioner also understood that if his plea was accepted, he was giving up any claim that the plea was the result of undisclosed promises or threats or that it was not his own choice to enter the plea.  (*Id.*)  Petitioner agreed that the plea agreement had been correctly stated by the prosecutor and that no one had promised him anything other than what had been placed on the record.  (*Id*. at 9-10.)  Petitioner denied that the plea was the result of any threats and that it was his choice to plead no contest.  (*Id*. at 10.)  Trial counsel and the prosecutor also confirmed that there were no promises, threats or inducements other than what was mentioned on the record.  (*Id*. at 11.) In light of the record, the trial court's factual findings of voluntariness are entitled to a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.

II.      **Ineffective Assistance of Counsel**

Petitioner contends that his plea was not knowing, intelligent and voluntary because he was denied the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and

-11-

(2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Specifically, Petitioner asserts that counsel was ineffective when he: (1) failed to adequately inform Petitioner of the immigration implications of his plea; (2) failed to request an interpreter; (3) provided grossly inaccurate information regarding the length of his sentence;

(4) failed to properly investigate the case regarding exculpatory evidence related to the complainant; and (5) failed to seek a severance from the co-defendant when Petitioner consistently asserted his innocence and desire to go to trial.

> A.   Failure to adequately inform regarding immigration implications of plea

Petitioner first claims that his counsel was ineffective for failing to advise him about the deportation consequences of his guilty plea.  In support of his claim, Petitioner cites *Padilla v. Kentucky*, 559 U.S. 356 (2010), which was decided by the Supreme Court before Petitioner was sentenced in this case.  In *Padilla*, the petitioner, a lawful permanent resident for over forty years, faced deportation after pleading guilty to drug distribution charges in Kentucky.  *Id*. at 359. The petitioner argued his counsel not only failed to advise him of the deportation consequences to entering a guilty plea, but also told him he "did not have to worry about immigration status since he had been in the country so long." *Id*.  The petitioner relied on his counsel's erroneous advise when he pled guilty to drug charges that made his deportation "virtually mandatory." *Id*.  Indeed, the relevant immigration statute unequivocally stated "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation . . . relating to a controlled substance . . . is deportable." *See* 8 U.S.C. § 1227(a)(2)(B)(i).

After a lengthy discussion on the evolving landscape of federal immigration law, the Supreme Court sided with the petitioner, holding that his counsel "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute," which "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id*. at 368.  The Court emphasized that the relevant statute made

the removal consequence for petitioner's conviction "succinct, clear, and explicit." *Id*. Because petitioner' adverse immigration consequences were "truly clear," counsel's duty to give correct advice was also clear. *Id*. at 369. However, the Court specifically warned against applying its newly-created "duty to advise" rule too broadly:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advise is equally clear.

*Id*. (emphasis added). In summation, the Court announced, "[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation." *Id*. at 374.

As set forth above, the trial court held a post-plea hearing on November 10, 2011, to address the immigration consequences of Petitioner's plea. The trial court explained that while the potential immigration consequences of the pleas, i.e., deportation, had been discussed thoroughly in chambers with both counsel before the plea hearing, the court had neglected to put it on the record. (*Padilla* Hr'g Tr. 4.) Counsel for both brothers confirmed that they had discussed the immigration ramifications with their clients before the plea hearing. (*Id*. at 6.) Petitioner's counsel further explained:

> Since the November 1 plea, we have had discussions with third parties, and I've spoken with Mr. German back and forth, and our understanding is that they are currently residents of the United States with a refugee status.
>
> And our understanding is, it is that refugee status that might create a problem, if you will, in terms their being able to be deported or being eligible for deportation,

-14-

given the circumstances which they were facing at the time.  They were granted refugee status in order to escape the former Yugoslavia, which is now Kosovo, and I have no idea what would happen if they were to return.

That is very much an issue, as I understand it, from the INS perspective, anything could happen, and as a result, the United State government may not deport them, even though they plead guilty to a crime which would normally result in deportation; they may say, "For your protection and safety, we're going to keep you in the U.S."

We've discussed that with our clients again today and they understand that situation.  They understand that, as a result, they may serve whatever sentence the court meeds [sic] out to them at the time of sentencing, and they then may be deported or they may stay here, or – all bets are off with regard to what will happen, and our clients understand that, your Honor.

(*Id*. at Tr. 6-7.)  Mr. German, counsel to Petitioner's brother, Ismer Gashi, told the court that he had "little, if any" experience with immigration issues, but had consulted with a local immigration attorney.  (*Id*. at 5.)  He further noted that the Gashi "family has also consulted with an immigration attorney in Detroit."  (*Id*.)   The court then asked Petitioner if he understood the potential consequences of the plea and he responded in the affirmative.  (*Id*. at 7.)

Unlike *Padilla*, defense counsel clearly did not tell Petitioner "not to worry" about his immigration status.  To the contrary, it is clear from the record that there was discussion before and after the plea hearing about the impact of the plea on Petitioner and his brother's immigration status and that Petitioner was well aware that he could be deported as a result of his plea.  The record also shows that the Gashi family was aware of the issue and had consulted with an immigration attorney in Detroit.  Petitioner attempts to argue that, like *Padilla*, counsel could have easily determined from reading the removal statute that his plea would make him subject to mandatory deportation, and, thus, was ineffective for failing to give correct advice.  Under 8 U.S.C. § 1227(2)(A)(iii), "Any alien who is convicted of an aggravated felony at any time after admission

-15-

is deportable."  For purposes of the statute, an "aggravated felony" is defined as "murder, rape, or sexual abuse of a minor." 8 U.S.C. §1101(A)(43).  Assuming that CSC I is the equivalent of "rape," making Petitioner "deportable" under the statute, his case is unique because he came to the United States as a refugee from the war in Kosovo.  At the November 10 hearing, defense counsel acknowledged that Petitioner was pleading guilty to an offense that "would normally result in deportation," but also discussed the possibility, however remote, that Petitioner could obtain relief from removal in light of his circumstances.  (*Padilla* Hr'g Tr. 6-7); *See also* Office of Immigration Litigation, U.S. Department of Justice, *Immigration Consequences of Criminal Convictions: Padilla v. Kentucky*, sec. 2(B)  (rev. Nov. 2010) (discussing forms of removal relief available to aliens convicted of aggravated felony offenses).  Because the immigration consequences in this case were not "clear, succinct and explicit," defense counsel fulfilled his duty under *Padilla* by informing his client that his plea carried a risk of deportation.  *Padilla*, 559 U.S. at 368-69.  Petitioner, therefore, cannot show a violation of clearly established Supreme Court precedent.

### B.   Failure to request an interpreter

Petitioner claims that he immigrated to the United States in 1999, at the age of nine, as a refuge from the conflict in Kosovo.  At the time of his arrest, Petitioner had been living in the United States for ten years.  Petitioner asserts that he speaks English as a second language, with Albanian being his first language, and that while he is proficient in conversational English, his command of the English language is not sufficient for him to fully comprehend the complexities of legal proceedings.  In an affidavit executed in June 6, 2011, Petitioner avers that he expressed to his attorney on more than one occasion that he was having difficulty understanding the criminal

proceedings and requested a translator, but his attorney responded, "'F@#k that," and refused to pursue acquiring a translator.' (Aff. of Nesret Gashi, ¶8, ECF No. 3-5, PageID.160.)

        Petitioner's claim that he had difficulty understanding the criminal proceedings is belied by the record. At the plea hearing on November 1, 2010, Petitioner responded appropriately to the trial court's questions. Petitioner stated that he read, signed and understood the "Advice of Rights" form, that he understood the charges against him and that the maximum penalty was life in prison, that he understood the rights he would be giving up by pleading no contest and that it was his choice to enter the plea. (Plea Tr. 5-10.) Before sentencing, Petitioner wrote a two-page letter to the Court asking to be sentenced at the "low end" of the range. (11/26/10 Nesrit Gashi Letter, ECF No. 36.) While the letter contained some minor spelling errors, it was well written and clearly demonstrated his ability to read and write in English. Petitioner's firm grasp of the English language also was evident from his allocution at the sentencing hearing, which spanned about three-and-a-half pages of transcript. (Sentencing Hearing Tr. 15-18.) At no time during the course of the plea proceedings, sentencing hearing or motion for resentencing did Petitioner express any difficulty understanding the proceedings or request an interpreter. Petitioner first raised the issue in his motion to withdraw the plea, which was filed eight months after he entered his plea of no contest.

        In light of the record, the Court cannot find that counsel rendered deficient performance by failing to request an interpreter for Petitioner. Moreover, because the record shows that Petitioner could comprehend, speak and read English, he cannot establish prejudice from not having the assistance of an interpreter.

C.    Failure to provide accurate information regarding the length of sentence

Petitioner contends that trial counsel provided him with grossly inaccurate information regarding the length of his sentence. According to Petitioner, counsel told him that, if he pleaded guilty, he would receive a sentence of time served or time at the county jail. His family allegedly was told that Petitioner would be sentenced to no more than 51 months if he entered the plea, but would serve 40 years or more if he went to trial and was convicted.

Even if Petitioner could show that his counsel incorrectly advised him concerning the length of his sentence, the Sixth Circuit has held, within the context of a habeas claim for ineffective assistance of counsel, that there is no prejudice where the state court's plea colloquy specifically addresses the confused term. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)). "[T]he state trial court's proper colloquy can be said to have cured any misunderstanding [a petitioner] may have had about the consequences of his plea." *Ramos*, 170 F.3d at 565. As previously discussed, the record shows that the trial judge adhered to proper plea colloquy procedure. With regard to Petitioner's sentence, the prosecutor explained the plea agreement, including that it included a minimum prison sentences between 51 and 135 months. (Plea Tr. 4-5, ECF No. 17.) Petitioner agreed that the plea agreement had been correctly stated by the prosecutor and that no one had promised him anything other than what had been placed on the record. (*Id.* at 9-10.) The trial court advised Petitioner of the charges against him and that he faced a maximum prison term of life in prison. (*Id.* at 6-7.) Petitioner stated that he understood. (*Id.* at 7.) Under these circumstances, Petitioner cannot show that he was prejudiced by counsel's alleged misadvice regarding the length of his sentence. Petitioner, therefore, is not

entitled to relief on this claim.  *See Ewing v. United States*, __ F. App'x __, No. 14-1869, 2016 WL 3182704, at *4-5 (6th Cir. June 7, 2016) (petitioner's claim that counsel was ineffective for misadvising him as to the length of his sentence if he pleaded guilty was foreclosed by a proper plea colloquy).

D.      Failure to investigate and to move for a severance

Petitioner's next two claims of ineffective assistance of counsel involve complaints about how defense counsel litigated the case before Petitioner entered his guilty plea.  Petitioner claims that counsel failed to investigate the complaining witness for the purpose of diminishing her credibility.  According to Petitioner, his family paid counsel $3,000 to hire a private investigator, but after numerous inquiries, no proof was provided that any investigation took place.  In addition, Petitioner contends that counsel was ineffective for failing to move to sever Petitioner's case from that of his brother.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.   Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See United States v. Stiger*, 20 F. App'x 307,

-19-

308–09 (6th Cir. 2001).  Petitioner's claims of ineffective assistance do not attack the voluntary or

intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to

earlier alleged constitutional deprivations.  His claims have therefore been waived by his subsequent

guilty plea.  *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209

(9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

          To the extent Petitioner claims that trial counsel's failure to investigate the

complainant and move for a severance prevented the plea from being knowing and voluntary, *see*

*Tollett*, 411 U.S. at 266–67, he has failed to make such a showing in this case.  Because Petitioner

was well aware of counsel's alleged failures at the time he decided to plead no contest, he cannot

show prejudice, i.e., that but for counsel's failures he would have insisted on going to trial and not

pled guilty.  Petitioner's vague and conclusory assertions of prejudice are insufficient to demonstrate

his plea was not knowing or voluntary under the circumstances.  Petitioner, therefore, is not entitled

to habeas corpus relief as the result of his counsel's performance.

II.      **Evidentiary Hearing**

          In his second ground for habeas corpus relief, Petitioner contends that he is entitled

to an evidentiary hearing when the state court refused to conduct an evidentiary hearing on his claims

of ineffective assistance of counsel, even when presented with supporting affidavits.  This Court

disagrees.  In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court explained that "[i]f a

claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome

the limitation of § 2254(d)(1) on the record that was before that state court."   *Id*. at 185.

Consequently, "district courts are precluded from conducting evidentiary hearings to supplement

existing state court records when a state court has issued a decision on the merits with respect to the

claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013). As previously discussed with regard to the standard of review, the decisions of the Michigan appellate courts are considered to have been made "on the merits." *See Harrington*, 562 U.S. at 99; *Werth*, 692 F.3d at 494. "While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it." *Ballinger*, 709 F.3d at 562. Because the orders denying Petitioner's applications for leave to appeal were "on the merits," this Court's review of his ineffective assistance of counsel claims is limited to the existing record.

## Conclusion

In light of the foregoing, the Court will deny the petition for failure to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Date:   August 10, 2016                  /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE